**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

| | | |
|---|---|---|
| In re BAYCOL PRODUCTS LITIGATION | : | MDL No. 1431 (MJD/SRN) |
| This Document Relates to: | : | |
| *John Hartman v. Bayer AG, et al.* | : | Case No. 02-0358 |

**DEFENDANTS' MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

Plaintiff John Hartman claims that Baycol caused and continues to cause his leg pain, weakness and instability. Baycol did not cause these ailments, and Mr. Hartman has no competent evidence to the contrary. Instead, Mr. Hartman's treating physicians (Allan E. McCamy, M.D. and Jennifer Neff, M.D.) and expert witness (Dr. McCamy) testified that his conditions are primarily attributable to his diabetic neuropathy and progressive lumbar disease. To the extent Mr. Hartman's expert opines that Baycol was a possible factor in Mr. Hartman's complaints, this testimony is inadmissible under Fed. R. Evid. 702 and *Daubert*. In any event, the expert's testimony does not create a triable issue of fact because he cannot opine that Baycol more likely than not caused Mr. Hartman's alleged injuries. On this record, Mr. Hartman has presented no triable issue of material fact as to whether Baycol caused his alleged injuries – an essential element of his claims.

Similarly, Mr. Hartman's claims of inadequate warnings fail to create an issue of fact, because the Baycol warnings were adequate as a matter of law under Minnesota's learned-intermediate doctrine. Therefore, summary judgment should be

entered against Mr. Hartman and in favor of defendants. *See* Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

## FACTS

Mr. Hartman took Baycol without complaint from November 1998 until it was withdrawn in August 2001. Deposition of Allan E. McCamy, M.D. (Ex. A) at 27-28, 90) After its withdrawal, he began complaining of leg pain and weakness that he attributed to his prior Baycol use. *Id.* at 90-91. But Mr. Hartman had been complaining to his doctors of leg pain, weakness and instability long before he first ingested Baycol. *Id*. at 79-85. His doctors attribute his symptoms to degenerative disk disease and complications from his long-standing, poorly controlled diabetes. *Id.* at 79-85, 99-100. Despite these diagnoses, Mr. Hartman blames Baycol for his symptoms.

### I. MR. HARTMAN'S PREEXISTING MEDICAL CONDITION EXPLAINS HIS COMPLAINTS OF PAIN, WEAKNESS AND INSTABILITY.

Mr. Hartman began complaining to his doctors of leg pain, weakness and instability as early as March 1991 – more than seven years before he started taking Baycol. *Id.* at 77-81. A CT scan done to evaluate those complaints revealed prominent degenerative disc disease. *Id.* at 83-85; Hartman Medical Records (Ex. ) at MC000033jrh. A MRI conducted in November 2001 showed that the disease had progressed significantly over the years and revealed narrowing of the spinal canal. McCamy Dep. (Ex. A) at 93-95. Mr. Hartman's treating physician testified that these conditions were a likely cause of Mr. Hartman's leg pain, weakness and instability complaints. *Id*. at 83-85, 94.

Mr. Hartman's medical history also contains additional long-standing, serious health conditions that contributed to his leg pain and weakness before and during the time he was taking Baycol. Since at least February 1993, Mr. Hartman has had "poorly controlled" diabetes that is, in part, due to Mr. Hartman's refusal to test his blood sugar and take insulin, as recommended by his physicians. Hartman Medical Records (Ex. ) at MC000032jrh; MC000022jrh; McCamy Dep. (Ex. B) at 64-65; Deposition of Jennifer Neff, M.D. (Ex. C) at 55. Further, Mr. Hartman was diagnosed with a B-12 deficiency in December 2001 and has required regular B-12 injections since that time. McCamy Dep. (Ex. A) at 62; Hartman Medical Records (Ex. B) at MC00005jrh. Poorly controlled diabetes and a vitamin B-12 deficiency can – and in Mr. Hartman's case, did – lead to peripheral neuropathy. McCamy Dep. (Ex. A) at 59-60, 66. Peripheral neuropathy is manifested by numbness or pain in the arms, hands, legs and/or feet, and can lead to muscle weakness. *Id*. at 59-64; Neff Dep. (Ex. C) at 52-53, 58.

Mr. Hartman's poorly controlled diabetes also led to cellulitis, an infection characterized by pain, swelling and sometimes ulceration. McCamy Dep. (Ex. A) at 75-76. Mr. Hartman has had two bouts of cellulitis in his feet, one beginning in January 2000 and another in March 2003. *Id*.; Hartman Medical Records (Ex. B) at MC000134-135jrh. With respect to the January 2000 episode, he reported to his physician that the pain and other symptoms made it hard for him to keep his balance when walking. Hartman Medical Records (Ex. B) at MC000021jrh. In March 2003, he complained of constant and sharp stabbing pains in the right lower extremity in connection with his

cellulitis. *Id.* at MC000134-135jrh. By mid-June 2003, he reported that his symptoms had worsened. *Id*. at MC000136jrh.

In an attempt to manage his diabetic condition, Mr. Hartman's physician prescribed Glucophage. McCamy Dep. (Ex. A) at 89. But Mr. Hartman complained of leg weakness with Glucophage, which resolved upon a reduction of the dose. *Id*.

In addition to problems related to his poorly controlled diabetes, Mr. Hartman has suffered from frequent, recurring episodes of kidney stones, for well over a decade. Hartman Medical Records (Ex. B) at MC000031jrh; Deposition of John Hartman (Ex. D) at 25-26. These episodes are often accompanied by hematuria (blood in the urine) and pain in his back and flank, which Mr. Hartman describes as the most pain he has ever experienced. Neff Dep. (Ex. C) at 59; Hartman Dep. (Ex. D) at 27-28. In April 2000, he had an episode of kidney stones that resulted in kidney failure, hematuria and nearly a week of severe pain. Hartman Medical Records (Ex. B) at MC000020jrh.

## II. MR. HARTMAN USED BAYCOL WITHOUT COMPLAINT UNTIL AFTER WITHDRAWAL.

As a consequence of his diabetes, Mr. Hartman is at risk for dying of heart disease and cerebral vascular disease. McCamy Dep. (Ex. A) at 66-67. This risk is increased by Mr. Hartman's elevated cholesterol and triglyceride levels. *Id*. Indeed, Mr. Hartman developed heart disease, which necessitated triple bypass surgery in July 2002. *Id.*; Hartman Medical Records (Ex. B) at SPHC000001. In November 1998, in an effort to reduce Mr. Hartman's risk for cardiovascular disease and stroke, Dr. Joseph Saccoman prescribed Baycol 0.3 mg per day to Mr. Hartman. McCamy Dep. (Ex. A) at 27-28.

Thereafter, Mr. Hartman's other treating physicians, including Dr. McCamy and his partner, Dr. Jennifer Neff, authorized numerous refills through September 2000. *Id*. at 25-31. Both Dr. Neff and Dr. McCamy testified that they would not have authorized these refills if there was any indication that Mr. Hartman was experiencing side effects from Baycol. *Id*. at 25-27, 29-30; Neff Dep. (Ex. C) at 41-43. On September 7, 2000, Dr. Thomas Lundsten, a colleague of Dr. McCamy and Dr. Neff, authorized one year of Baycol refills. Deposition of Thomas Lundsten, M.D. (Ex. E) at 6. Dr. Lundsten testified that if he thought Mr. Hartman was experiencing any problems related to his use of Baycol, he would not have authorized this refill. *Id.* at 7-8.

Mr. Hartman had numerous office visits with both Dr. Neff and Dr. McCamy during the period that he took Baycol. During this almost three-year period, Mr. Hartman never disclosed any problems with his Baycol use or reported any symptoms that his physicians attributed to Baycol. McCamy Dep. (Ex. A) at 50-52, 87-90; Neff Dep. (Ex. C) at 51, 59-66, 68-70, 72-76. Yet after Mr. Hartman heard of the Baycol withdrawal and stopped taking Baycol, he complained of leg pain and weakness that he associated with Baycol. Hartman Dep. (Ex. D) at 15. Mr. Hartman claimed that these symptoms had persisted since 1998, when he started taking Baycol. McCamy Dep. (Ex. A) at 107-108.

As a result of Mr. Hartman's complaints in August 2001, Dr. Neff considered the possibility of statin-induced rhabdomyolysis and ordered a CPK test. Neff Dep. (Ex. C) at 86-87. The CPK test was normal, which caused Dr. Neff to conclude that Mr. Hartman was not experiencing a side effect from Baycol. *Id*. In November 2001,

Dr. McCamy further evaluated Mr. Hartman's complaints of leg pain and weakness and ordered another CPK test to confirm Dr. Neff's findings. McCamy Dep. (Ex. A) at 92-93. Again, Mr. Hartman's CPK levels were normal, and Dr. McCamy determined that Mr. Hartman did not have Baycol-associated rhabdomyolysis. *Id*. In an effort to determine the cause of Mr. Hartman's pain, Dr. McCamy ordered an EMG of Mr. Hartman's lower extremities and an MRI of his lumbar spine. *Id*. Mr. Hartman's EMG was consistent with diabetic peripheral neuropathy. *Id*. at 95-96. The MRI revealed progression of the degenerative disc disease that Mr. Hartman was diagnosed with in 1991 and spinal canal stenosis. *Id.* at 94-95. Based upon these findings, Dr. McCamy diagnosed Mr. Hartman with diabetic neuropathy and lumbar disc disease. *Id.* at 92, 94-95.

Dr. McCamy concluded that Mr. Hartman's "diabetes alone is a contributing factor with peripheral neuropathy and potentially a myopathy . . . " explaining his complaints of leg weakness and pain. *Id*. at 99. He also concluded that the progression of Mr. Hartman's degenerative disc disease could explain his complaints of leg weakness and pain. *Id*. at 94-95. Indeed, Mr. Hartman's failure to voice any complaints of muscle pain and weakness until nearly three years after he started taking Baycol raised doubt in Dr. McCamy's mind that Baycol caused his symptoms. *Id*. at 101-02. Based upon this late onset of symptoms, Dr. McCamy testified that diabetic peripheral neuropathy is the more likely cause of Mr. Hartman's leg pain and weakness. *Id*. at 101.

According to Dr. McCamy, if a statin is causing a myopathy, the myopathic symptoms will improve within several weeks to several months upon discontinuation of the statin. *Id*. at 98. However, Mr. Hartman continues to complain of leg pain and weakness that he associates with Baycol, years after he has discontinued the medication.

**ARGUMENT**

## I. MR. HARTMAN CANNOT PROVE THE ESSENTIAL ELEMENTS OF HIS CLAIMS.

### A. Causation is an Essential Element of Mr. Hartman's Claims.

Mr. Hartman asserts claims for strict liability, negligence, negligence per se, breach of express warranty and breach of implied warranty. For each of these claims, Mr. Hartman must prove that Baycol caused his injuries. *Fireman's Fund Ins. Co. v. Canon U.S.A., Inc.*, 394 F.3d 1054, 1060 (8th Cir. 2005) (under Minnesota law, strict product liability, negligence and breach of warranty all include a causation element); *Tuttle v. Lorillard Tobacco Co.*, 377 F.3d 917, 925 (8th Cir. 2004) (Minnesota has not adopted the "so-called heeding presumption" of causation in failure to warn claims); *Worden v. Gangelhoff*, 241 N.W.2d 650, 651 (Minn. 1976) (since the plaintiff could not prove causation, instructing the jury on the alternative theories of strict liability, breach of implied warranty, and negligence per se would have been pointless).

Mr. Hartman also asserts a claim for violations of "applicable" consumer protection statutes. The allegations in Plaintiff's complaint concerning those statutes require Mr. Hartman to prove that Baycol caused his injuries. Compl. ¶ 58 (alleging that consumer statute violations caused Mr. Hartman's injuries); *Duxbury v. Spex Feeds, Inc.*,

681 N.W.2d 380, 394 (Minn. Ct. App. 2004) (in a consumer fraud action the plaintiff must prove that "the plaintiff's reliance on the false information or deceptive practice harmed the plaintiff"); *Flynn v. Am. Home Prods. Corp.*, 627 N.W.2d 342, 351 (Minn. Ct. App. 2001) (in a private action under Minnesota's consumer protection statutes a "casual nexus" between the alleged injury and the statutory violation is a necessary element).

Mr. Hartman also asserts a claim for medical monitoring; however, Minnesota does not recognize this as a stand-alone tort. *Thompson v. Am. Tobacco Co.*, 189 F.R.D. 544, 552 (D. Minn. 1999), *rejected on other grounds by Group Heath Plan, Inc. v. Philip Morris Inc.*, 621 N.W.2d 2, 14-15 (Minn. 2001); *In re St. Jude Med., Inc. Silzone Heart Valves Prods. Liab. Litig.*, No. MDL 01-1396 JRTFLN, 2004 WL 45504, at *7-9 (D. Minn. Jan. 5, 2004), *rev'd and remanded on other grounds*, 425 F.3d 1116 (8th Cir. 2005). Instead, Mr. Hartman must prove that Baycol caused a present injury. *Werlein v. United States*, 746 F. Supp. 887, 904 (D. Minn. 1990) *vacated in part on other grounds by* 793 F. Supp. 898 (D. Minn. 1992) (holding that a plaintiff can recover costs of future medical monitoring if the plaintiff "can prove that he has *present injuries* that increases his risk of future harm" (emphasis added)); *In re St. Jude Med.*, 2004 WL 45504, at *7-9 (stating that under Minnesota law medical monitoring requires proof of an injury).

All of the above claims fail because Mr. Hartman cannot establish that Baycol caused his alleged injuries. To meet this burden, he must prove that Baycol was a "substantial factor," *Thompson v. Hirano Tecseed Co.*, 456 F.3d 805, 812 (8th Cir. 2006),

or "probably, or more likely than not," caused his injuries. *McDaniel v. Bieffe USA, Inc.*, 35 F. Supp. 2d 735, 738 (D. Minn. 1999). This Court has held that Baycol plaintiffs must prove such causation through expert testimony, *In re Baycol Prods. Litig.*, 321 F. Supp. 2d 1118, 1125-27 (D. Minn. 2004), which Mr. Hartman has not done.

**B. Plaintiff's Claims Fail Because There is No Competent Medical Evidence to Support the Claim that Baycol Caused Plaintiff's Alleged Injuries.**

**1. The Medical Record and Factual Testimony of Mr. Hartman's Treating Physicians Do Not Support Plaintiff's Claim that Baycol Caused His Alleged Injuries.**

During the nearly three years that Mr. Hartman took Baycol, he never reported any complaints and his physicians never observed any symptoms that they attributed to Baycol. McCamy Dep. (Ex. A) at 50-52, 87-90; Neff Dep. (Ex. C) at 51, 59-66, 68-70, 72-76. Instead, Mr. Hartman continued to have the health problems associated with his diabetes, degenerative disc disease and kidney stone condition that he had prior to taking Baycol. Mr. Hartman's treating physician identified these conditions as the likely cause of his leg pain and weakness. McCamy Dep. (Ex. A) 82-85, 94-95, 99-100.

After Mr. Hartman learned of the Baycol withdrawal, he then started complaining of leg weakness and pain that he attributed to Baycol. Hartman Dep. (Ex. D) at 15. Dr. Neff evaluated these complaints in August 2001, and specifically considered the possibility that his symptoms might be indicative of rhabdomyolysis, which she defines as *any* elevation in CPK above the normal range. Neff Dep. (Ex. C) at 81, 86-87. However, Mr. Hartman's CPK test was entirely normal, and Dr. Neff concluded that his complaints were not due to Baycol. *Id*. at 86-87, 102-105.

In November 2001, Dr. McCamy again evaluated Mr. Hartman's complaints. He repeated the CPK test, which was again normal. McCamy Dep. (Ex. A) at 92-93. However, an MRI revealed that Mr. Hartman's spinal conditions (first diagnosed in 1991) had worsened, and his EMG test was consistent with diabetic peripheral neuropathy. *Id*. at 95-96. Either of these conditions could have independently caused Mr. Hartman's leg pain and weakness. *Id.* at 99-100. Dr. McCamy did not identify Baycol as causing or contributing to Mr. Hartman's symptoms at this time, and in fact, noted that he found "no evidence for Baycol-associated rhabdomyolysis," which he defines as "probable muscle pain, soreness, probable weakness, probably dark urine, possibly blood in the urine, and in severe cases, decreased urine output, kidney failure."

**2. Dr. McCamy's "Expert" Testimony is Inadmissible Under *Daubert*.**

Despite Dr. McCamy's findings in November 2001, Dr. McCamy submitted an expert report in June 2004 stating that Baycol caused Mr. Hartman's leg pain and weakness. Case Specific Expert Report Pursuant to PTO 114 (Ex. F). This opinion lacks scientific reliability and should be excluded under Daubert and Fed. R. Evid. 702.

*Dr. McCamy did not follow proper scientific method in "ruling in" Baycol.* According to Dr. McCamy, his changed opinion is based upon the medical community's "evolving understanding of Baycol (and other "statin" drug) muscle related side effects." Expert Report (Ex. F). Specifically, "since we learned that, again, the laboratory tests can be normal, the symptoms can be merely weakness without the impressive pain or the

kidney damage, I've come to learn now that it still would be Baycol as one of the culprits." McCamy Dep. (Ex. A) at 102. Yet, Dr. McCamy was unable to identify any medical articles or literature upon which this "evolving understanding" and his resulting opinion was based. *Id*. at 109-110. Such reliance upon vague references is not sufficient to support a causation opinion. *See, e.g., Gander Mountain Co. v. Cabela's*, Inc., No. 04-CV-3125, 2007 WL 2026751, at *5-6 (D. Minn. July 10, 2007) (noting that an expert's references to "Form License Agreements" was too vague to determine whether expert relied upon sufficient facts and data for admissibility); *Kemp v. Tyson Seafood Group, Inc.*, No. Civ. 5-96-173 JRT/RLE, 2000 WL 1062105, at *7 (D. Minn. July 19, 2000) ("the day of the expert, who merely opines, and does so on the basis of vague notions of experience, is over").

An opinion based on an "evolving understanding" is particularly unreliable where, as here, the medical record does not support such speculations. In particular:

- Mr. Hartman's physicians – including Dr. McCamy – found no objective evidence of a Baycol-related injury when Mr. Hartman was tested at the time of withdrawal or in the months thereafter, *see supra*, at Part II; and

- Prior to the Baycol withdrawal, Mr. Hartman's medical records are devoid of any complaints or symptoms supporting Mr. Hartman's claim of a Baycol injury; McCamy Dep. (Ex. A) at 50-52, 87-90; Neff Dep. (Ex. C) at 51, 59-66, 68-70, 72-76.

Nevertheless, Dr. McCamy opined that Mr. Hartman experienced symptoms from his Baycol use since 1998. McCamy Dep. (Ex. A) at 107-108. ***Dr. McCamy based this opinion upon Mr. Hartman's self-reporting*** – after Baycol had been withdrawn and after Mr. Hartman filed this lawsuit. *Id*. at 108 (Q: "So you would have to

rely on what Mr. Hartman says in terms of when the symptoms started, correct?" A: "Yes." Q: "Because certainly, your medical records don't show that there were any symptoms that you attribute to Baycol until after Baycol was withdrawn, correct?" A: "Correct.") A sound medical opinion cannot, however, be based entirely upon a patient's self-reporting, particularly where, as here, that patient is also a plaintiff in a lawsuit. *See Goeb v. Tharaldson*, 615 N.W.2d 800, 816 (Minn. 2000) ("The self-reporting of a plaintiff's medical history in preparation for litigation, without additional independent confirmation, is inherently unreliable.") (citing *In re Paoli R.R. Yard PCB Litig*., 35 F.3d 717, 762 (3d Cir. 1994).

Thus, Dr. McCamy has neither a principled scientific basis for "ruling in" Baycol, nor a factual record that would support the opinion that Baycol might have caused Mr. Hartman's complaints. His opinion should therefore be excluded as unreliable.

***Dr. McCamy failed to "rule out" alternate causes of Mr. Hartman's ailments.*** Even if Dr. McCamy's had a basis to "rule in" Baycol as a possible cause of Mr. Hartman's symptoms, Dr. McCamy's opinion must still be excluded because he failed to "rule out" all other possible causes. *See Turner v. Iowa Fire Equip. Co.*, 229 F.3d 1202, 1209 (8th Cir. 2000). This Court requires that experts consider all potential causes and then rule out the least likely until the most probable cause of injury can be identified. *See In re Baycol*, 321 F. Supp. 2d at 1124-27 (requiring differential diagnosis); *see also National Bank of Commerce v. Associated Milk Producers, Inc.*, 191 F.3d 858, 861 (8th Cir. 1999) (excluding expert as unreliable for failing to rule out

potential alternative causes of plaintiff's illness); *Medalen v. Tiger Drylac U.S.A., Inc.*, 269 F. Supp. 2d 1118, 1139-40 (D. Minn. 2003) (same).

Dr. McCamy identified three potential causes of Mr. Hartman's symptoms – diabetic neuropathy, lumbar disease and Baycol. McCamy Dep. (Ex. A) at 102. By Dr. McCamy's admission, he is unable to rule out either diabetic neuropathy or lumbar disease as causing or contributing to Mr. Hartman's condition. *Id.* at 99 ("The diabetes alone is a contributing factor with peripheral neuropathy and potentially a myopathy, both of which were documented."), 100 ("The second would be his spine disease. Both of those could give those symptoms and certainly in combination."); 94-95.

In fact, *Dr. McCamy identified diabetic neuropathy – not Baycol – as the most likely cause of Mr. Hartman's symptoms*. *Id.* at 100-101. Further, Dr. McCamy acknowledged that neither the onset nor duration of Mr. Hartman's complaints were consistent with a statin-induced injury. *Id*. at 98-100. Nevertheless, Dr. McCamy testified that there is a "possibility" that Mr. Hartman's prior Baycol use contributes to his current symptoms, but believes that diabetic neuropathy and lumbar disease are "undeniably there." *Id*. at 102-103. Not surprisingly, Dr. McCamy is unable to apportion the degree of alleged injury caused by Baycol. *Id.* at 108.

Dr. McCamy's insistence that Baycol must somehow be a contributing factor is not a scientific differential diagnosis; it is speculation that cannot form a proper foundation for expert testimony. *See Wright v. Willamette Indus., Inc.*, 91 F.3d 1105, 1108 (8th Cir. 1996) (reversing judgment for plaintiffs in a toxic tort case because their

expert's testimony was "simply speculation" and thus the "jury could therefore only have speculated about whether [plaintiffs' exposure to chemicals] was sufficient to cause their injuries."); *Solheim Farms, Inc. v. CNH Am., LLC*, 503 F. Supp. 2d 1146, 1149 (D. Minn. 2007) ("[e]xpert testimony is inadmissible if it is speculative, unsupported by sufficient facts, or contrary to the facts of the case"). Such speculation is unreliable and should be excluded.

***Dr. McCamy concedes he is not an expert with respect to statin-induced myopathy***. Finally, Dr. McCamy's opinion should be excluded because he admittedly lacks the expertise and knowledge necessary to render an opinion in this case. First, he fails to even regard himself as an expert. McCamy Dep. (Ex. A) at 103 ("Expert opinions? I guess I don't regard myself as an expert, so I would say no."); 107 (denying the specialized training necessary to render definite opinions). Second, he has neither lectured nor attended courses focused on statin-induced myopathy. *Id*. at 108-109. He has never authored any journal articles on statin-induced myopathy and does not have specialized training in this area. *Id*. Further, he rarely prescribed Baycol in his practice and never read the complete Baycol package insert. *Id*. at 32.

In short, because Dr. McCamy's opinion is not based on proper expertise, scientific methodology and exclusion of potential alternative causes, it is not admissible under Fed. R. Evid. 702 and *Daubert*. *See, e.g., National Bank*, 191 F.3d at 861; *Medalen*, 269 F. Supp. 2d at 1139-40.

### 3. Dr. McCamy's Testimony Does Not Create a Triable Issue of Fact.

Even if his testimony were admissible, Dr. McCamy's opinion does not create a triable issue of fact regarding whether Baycol caused Mr. Hartman's alleged injuries. Mr. Hartman must prove that Baycol more likely than not caused his ailments; thus, Baycol must have been a substantial factor in creating his harm. *McDaniel*, 35 F. Supp. 2d at 738; *Thompson*, 456 F.3d at 812. Dr. McCamy was unable to testify that Baycol was the more likely cause or even a substantial factor in causing Mr. Hartman's complaints of muscle pain, weakness and instability. Instead, Dr. McCamy testified that Mr. Hartman's diabetic peripheral neuropathy was the more likely cause for his complaints. Dr. McCamy can identify Baycol as a potential, contributing factor, at best. McCamy Dep. (Ex. A) at 101-103. Dr. McCamy admitted that he could not even apportion the role he thought Baycol may have played in causing Mr. Hartman's alleged injuries. *Id*. at 99-102, 108.

Dr. McCamy's testimony cannot establish that Baycol was the more likely cause or a substantial factor in bringing about Mr. Hartman's alleged injury. Therefore, his testimony does not create a triable issue of fact. Accordingly, even if Dr. McCamy's testimony were admissible, summary judgment should still be entered against Mr. Hartman.

## C. Plaintiff's Injury Claims Fail Because Baycol's Warnings Were Adequate.

Plaintiff asserts that defendants were negligent for inadequately warning about Baycol's risks. Compl. ¶ 46(d), (e) (negligent failure to warn). However, even if

Baycol were the cause of Mr. Hartman's alleged injury, which it was not, Mr. Hartman's claims for inadequate warnings fail because defendants discharged their duty to warn of the very risk that plaintiff allegedly experienced on Baycol and for which he now seeks to recover.

Under Minnesota law, physicians act as intermediaries between drug manufacturers and patients, and physicians have the duty to warn patients about the risks of prescription drugs. *See Bruzer v. Danek Medical, Inc*., 1999 WL 613329, at *6 (D. Minn. Mar. 8, 1999) (noting that the treating physician "'is in the best position to understand the patient's needs and assess the risks and benefits of a particular course of treatment.'" (quoting *Brooks v. Medtronic, Inc.*, 750 F.2d 1227, 1231 (4th Cir. 1984))); *Mulder v. Parke Davis & Co*., 181 N.W.2d 882, 885 n. 1 (Minn. 1970) ("The manufacturer has no duty to warn the lay public regarding prescription drugs." (citing *Stottlemire v. Cawood*, 213 F. Supp. 897, 899 (D.D.C. 1963) and *Love v. Wolf*, 226 Cal. App. 2d 378, 395, (1964)). If a manufacturer provides a physician with adequate warning as to the risks of the drug, the manufacturer is not liable for injuries caused by the drug. *See Johnson v. Zimmer, Inc*., 2004 WL 742038, at *9 (D. Minn. Mar. 31, 2004) ("[A] manufacturer can satisfy its duty to warn by supplying the plaintiff's physician with an adequate warning of hazards and risks."); *Todalen v. U.S. Chemical Co*., 424 N.W.2d 73, 79 (Minn. Ct. App. 1988) *overruled on other grounds by Tyroll v. Private Label Chems., Inc*., 505 N.W.2d 54 (Minn.1993) ("A manufacturer of prescription drugs can satisfy its duty to warn by supplying the prescribing physician with an adequate warning of hazards and risks attendant in the use of the medication.").

Because the manufacturer's duty to warn is "satisfied by adequately warning [the] physician," an adequate warning completely discharges the manufacturer's duty to warn. *Johnson v. Zimmer, Inc.*, 2004 WL 742038, at *9. Warning labels on prescription drugs are adequate as a matter of law if "it provides adequate warnings to the physician about any known or reasonably knowable dangerous side effects, regardless of whether the warning reaches the patient." *In re Guidant Corp. Implantable Defibrillators Prods. Liab. Litig.*, 2007 WL 2023569, at *2 (D. Minn. July 6, 2007) (applying California law) (citing Restatement (Second) of Torts, § 402A, comment k, and *Brown v. Superior Court*, 44 Cal. 3d 1049, 1061 (1988)) ; *see O'Hare v. Merck & Co.*, 381 F.2d 286, 292 (8th Cir. 1967) (upholding the U.S. District Court of Minnesota judgment notwithstanding verdict finding that a prescription drug warning was adequate). *See also Plenger v. Alza Corp.*, 11 Cal. App. 4th 349, 361-62 (1992) (affirming the trial court's order for summary judgment after finding warning that disclosed risk of injury experienced by plaintiff was adequate); *see also Temple v. Velcro USA, Inc.*, 148 Cal. App. 3d 1090, 1095 (1983) (holding a "clear, understandable and completely unambiguous" warning adequate as a matter of law).

Here, the Baycol package insert warned of the exact risk that plaintiff allegedly experienced – myopathy. The Baycol labeling in effect during the time that plaintiff took Baycol clearly disclosed the risk of myopathy. *See* September 1997 Baycol Package Insert (Ex. G) (including in the list of "WARNINGS" the risk of "myopathy," i.e., "muscle tenderness or weakness"). It also instructed patients "to report promptly muscle pain, tenderness or weakness" and instructed physicians to that "BAYCOL should

be discontinued" "if myopathy is diagnosed or suspected." *Id*. These warnings were clear and direct, and they were approved by the FDA, which determined that Baycol was "safe and effective" for use as recommended in the labeling. *See* FDA Approval Letters (Exs. H and I).

Having provided adequate warnings to Mr. Hartman's physicians about the risks and hazards of Baycol, defendants' satisfied their duty to warn. Any further warnings to the patient were warnings the physicians, not the defendants, were required to convey. Because the Baycol package insert provided physicians with adequate warning of the risks associated with the prescription, the warning was adequate as a matter of law. Therefore, summary judgment is appropriate on Hartman's claim of strict liability and negligence based upon inadequate warnings.

## II. MR. HARTMAN HAS NO EVIDENCE TO SUPPORT HIS UNJUST ENRICHMENT CLAIM.

Mr. Hartman has offered no evidence to support his claim for unjust enrichment. To prevail on such a claim, Mr. Hartman must prove that Bayer "knowingly received something of value to which [it] was not entitled, and that the circumstances are such that it would be unjust for" Bayer to retain the benefit. *Schumacher v. Schumacher*, 627 N.W.2d 725, 729 (Minn. Ct. App. 2001); *Southtown Plumbing, Inc. v. Har-Ned Lumber Co.*, 493 N.W.2d 137, 140 (Minn. Ct. App. 1992). To prove that Bayer was "unjustly" enriched, Mr. Hartman must prove that Bayer's conduct was illegal, unlawful or unconscionable. *Schumacher*, 627 N.W.2d at 729-30.

Here, the only value Bayer potentially received from Mr. Hartman is the amount, if any, Mr. Hartman contributed to the cost of his Baycol prescriptions. In return ,Mr. Hartman received medication prescribed by his physicians because Mr. Hartman's uncontrolled diabetes and high cholesterol put him at risk for dying of heart disease and cerebral vascular disease. McCamy Dep. (Ex. A) at 66-67. Tests taken when he started Baycol and shortly after he discontinued Baycol confirm that Mr. Hartman benefited from cholesterol management through Baycol. *Compare* Deposition of Joseph J. Saccoman, M.D. (Ex. J) at 32 (testifying that, when he prescribed Baycol in 1998, Mr. Hartman's triglycerides were 449, total cholesterol was 200, and HDL was 32) *with* Hartman Medical Records (Ex. B) at MC000045 (showing that on August 20, 2001, shortly after Mr. Hartman discontinued Baycol, his triglycerides were 202, his total cholesterol was 169, and his HDL was 28).

Mr. Hartman can point to no evidence of unlawfulness or unconscionable activity that would make it "unfair" for defendants to retain whatever Mr. Hartman paid for the medicine that helped him. Baycol was marketed lawfully pursuant to FDA approval. Approval Letter (Ex. H). Moreover, Mr. Hartman claims only that he suffered aches and pains that he attributed to Baycol, a risk that exists with all statins and one Bayer warned of in its labeling. Package Insert (Ex. G) Because Mr. Hartman has presented no triable issue of fact, summary judgment on Mr. Hartman's unjust enrichment claim should be entered in favor of defendants.

**CONCLUSION**

For the foregoing reasons, defendants respectfully request that the Court dismiss this action with prejudice, and grant summary judgment in favor of the defendants and against plaintiff John Hartman.

Dated: December 11, 2007

Respectfully submitted,

Philip S. Beck
Adam Hoeflich
BARTLIT BECK HERMAN PALENCHAR & SCOTT LLP
54 West Hubbard Street, Suite 300
Chicago, IL 60610
(312) 494-4400

/signature on file/
Susan A. Weber
James W. Mizgala
Jana D. Jobes
SIDLEY AUSTIN LLP
One South Dearborn Street
Chicago, IL 60603
(312) 853-7000

Paul J. Zidlicky
SIDLEY AUSTIN LLP
1501 K Street, N.W.
Washington, D.C. 20005
(202) 736-8000

Richard K. Dandrea
ECKERT SEAMENS CHERIN & MELLOTT LLC
USX Tower, 600 Grant St., 44th Floor
Pittsburgh, PA 15219
(412) 566-6000

Scott A. Smith
Tracy J. Van Steenburgh
HALLELAND LEWIS NILAN SIPKINS & JOHNSON, P.A.
220 South Sixth Street, Suite 600
Minneapolis, Minnesota 55402-4501
(612) 338-1838

/signature on file/
Fred T. Magaziner
DECHERT LLP
Cira Centre
2929 Arch Street
Philadelphia, PA 19104
(215) 994-4000

*Counsel for SmithKline Beecham Corporation d/b/a GlaxoSmithKline*

Peter W. Sipkins (No. 101540).
Elizabeth S. Wright (No. 0184111)
DORSEY & WHITNEY LLP
50 South Sixth Street, Suite 1500
Minneapolis, MN 55402
(612) 340-2600

Douglas R. Marvin
WILLIAMS & CONNOLLY
725 Twelfth Street, N.W.
Washington, D.C. 20005
(202) 434-5000

*Counsel for Bayer Corporation and Bayer AG*