**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

| | | |
|---|---|---|
| In re BAYCOL PRODUCTS LITIGATION | : | MDL No. 1431 (MJD/SRN) |
| This Document Relates to: | : | |
| *John Hartman v. Bayer AG, et al.* | : | Case No. 02-0358 |

**DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT**

## INTRODUCTION

Defendants' opening brief demonstrated that Mr. Hartman had no competent evidence that Baycol caused him any injury. Plaintiff's opposition relies on the *post hoc* accounts of plaintiff and his ex-wife, which are not competent to establish medical causation. Plaintiff also cites the expert report of Dr. McCamy, but ignores the doctor's actual testimony, in which he admitted that he was unable to rule out other causes for plaintiff's claims of muscle aches and weakness. Thus, none of the evidence cited by plaintiff is sufficient to create a triable issue of fact on injury causation.

Defendants also demonstrated in their opening brief that Mr. Hartman's claims were barred because defendants warned of the precise injury alleged by plaintiff, and his prescribing physicians were a learned intermediary who knew statins could cause muscle aches. Plaintiff responds by asserting that the warnings were inadequate, but cites no evidence to support this claim. Bald assertions are not sufficient to defeat summary judgment.

Finally, defendants demonstrated that Mr. Hartman had no evidence to support an unjust enrichment claim. Mr. Hartman contends that he can create a triable issue of fact simply by asserting that Bayer wrongfully benefited from his purchase of Baycol. That, of course, is not the standard on summary judgment. Rather, plaintiff must come forward with evidence to establish the existence of a triable issue of material fact. *Federal Deposit Ins. Corp. v. Bell,* 106 F.3d 258, 263 (8th Cir. 1997) [1]

In short, plaintiff's opposition cites no evidence that would create a triable issue of as to any of his claims. Judgment should therefore be entered in favor of defendants.

## ARGUMENT

### I. PLAINTIFF HAS FAILED TO IDENTIFY FACTS SUFFICIENT TO RAISE A GENUINE ISSUE OF MATERIAL FACT AS TO WHETHER BAYCOL CAUSED HIM ANY INJURY.

Plaintiff relies on two types of evidence to support his claim that he suffered an injury caused by Baycol: (A) the testimony of plaintiff and his ex-wife; [2] and (b) the case-specific expert report provided by Dr. McCamy. Neither is sufficient to create a triable issue of material fact on injury causation.

---

[1] Plaintiff also argues that his fraud claim should go to trial. Again, plaintiff cites no evidence in support of his claim. Moreover, as Bayer explained in its opening brief, this claim fails because Mr. Hartman has no competent evidence he suffered an injury caused by Baycol.

[2] Ms. Hartman continues to live with Mr. Hartman. She testified that they divorced to maximize benefits available to them. Deposition of Loretta F. Hartman (Ex. K) at 7-10.

### A. Plaintiff's Self-Reporting Cannot Create A Genuine Issue of Material Fact on Injury Causation.

Plaintiff's brief relies heavily on the testimony of plaintiff and his ex-wife, both of whom assert Mr. Hartman suffered an injury caused by Baycol. Pl. Opp. at 4-8, 22. However, the Hartmans' accounts are not sufficient to create a genuine issue of material fact on medical causation.

As this Court has previously held, "personal injury cases involving pharmaceuticals, toxins or medical devices involve complex questions of medical causation beyond the understanding of a lay person." *Ronwin v. Bayer Corp.*, 321 F. Supp. 2d 1118, 1126 (D. Minn. 2004). *See also Willert v. Ortho Pharma. Corp.*, 995 F. Supp. 979, 983 (D. Minn. 1998). Numerous courts have held self-reporting such as that offered by the Hartmans to be unreliable and insufficient proof. *See Johnson v. Metropolitan Life Ins. Co.*, 437 F.3d 809, 812-814 (8th Cir. 2006) (upholding a plan administrator's denial of disability benefits based on its determination that self-reported, subjective complaints were insufficient proof of disability without supporting objective medical findings); *Pralutsky v. Metropolitan Life Ins. Co.*, 435 F.3d 833, 837 (8th Cir. 2006) (same). *See also Goeb v. Tharaldson*, 615 N.W.2d 800, 816 (Minn. 2000) (finding that self reporting of "medical history in preparation for litigation, without additional independent confirmation, is inherently unreliable" (citing *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 762 (3rd Cir. 1994)).[3]

[3] The testimony of the Hartmans demonstrates the inherent unreliability of a plaintiff's self-reporting. For instance, Mr. Hartman testified that he "had perfect legs" before taking Baycol and that he is only "'borderline' diabetic, but does not take insulin." Pl.

Under these authorities, plaintiff's revisionist account of his medical history cannot create a triable issue of material fact on injury causation. Rather, the question is whether a physician has formed an opinion, grounded in science and formed through differential diagnosis, that would support plaintiff's claim that he suffered a Baycol-related injury. As demonstrated below and in defendants' opening brief, plaintiff has no such testimony.

**B. Dr. McCamy's Report Does Not Create a Genuine Issue Of Fact As To Whether Baycol Was a Substantial Factor in Causing Mr. Hartman's Symptoms.**

To establish medical causation, plaintiff must show that Baycol was a "substantial factor," in causing his injuries, *Thompson v. Hirano Tecseed Co.*, 456 F.3d 805, 812 (8th Cir 2006), or "probably, or more likely than not," caused his injuries, *McDaniel v. Bieffe USA, Inc.*, 35 F. Supp. 2d 735, 738 (D. Minn. 1999). Because expert testimony is required, plaintiff's case rests entirely upon the evidence of Dr. McCamy. And that evidence does not create a triable issue of material fact on whether Baycol was a "substantial factor" in causing Mr. Hartman's alleged injuries.

Defendants demonstrated in their opening brief that Dr. McCamy's testimony must be excluded because he had no scientific basis for "ruling in" Baycol as a

---

Opp. at 5, 3. But the medical record shows that, as far back as March 1991, Mr. Hartman had reported that his leg felt "very unstable" and his physician noted "marked weakness" in Mr. Hartman's right quadricep. Hartman Medical Records (Ex. B to Opening Brief) at MC000033jrh. As for Mr. Hartman's diabetes, Dr. Neff described the condition as "extremely out of control," Neff Dep. (Ex. L) at 55, and Dr. McCamy testified that Mr. Hartman's diabetes was so poorly controlled that it was leading to complications such as heart disease and peripheral neuropathy. McCamy Dep. (Ex. M) at 62-64, 66, 92. Both Dr. Neff and Dr. McCamy have told Mr. Hartman to take insulin, but he has refused to do so. *Id.* at 65; Neff Dep. (Ex. L) at 54-55.

potential cause of Mr. Hartman's aches and pains. It is undisputed that Dr. McCamy did not attribute any of Mr. Hartman's ailments to Baycol while Mr. Hartman was taking the medicine. McCamy Dep. (Ex. M) at 50-52, 87-90. Moreover, Dr. McCamy and a colleague conducted tests in the fall of 2001 that showed no objective evidence of Baycol-related injury: Mr. Hartman had normal CPK readings and other results consistent with diabetic peripheral neuropathy and degenerative back disease. *Id.* at 92-95. Dr. McCamy formed his PTO 114 opinion based upon Mr. Hartman's self-reporting and upon a vague "evolving understanding" of problems associated with Baycol – neither of which forms a reliable basis for an expert opinion. *See In re Air Crash at Little Rock, Ark.*, 291 F.3d 503, 514 (8th Cir. 2002) (testimony on causation must be grounded in the medical record). *See also* Defs' Opening Brief at 10-12.

Further, Dr. McCamy's testimony showed that he had not conducted a proper differential diagnosis that ruled out other causes before attributing Mr. Hartman's ailments to Baycol. *See Turner v. Iowa Fire Equip. Co.*, 229 F.3d 1202, 1208 (8th Cir. 2000). Indeed, Dr. McCamy conceded that diabetic neuropathy, not Baycol, was the most-likely cause of Mr. Hartman's symptoms. McCamy Dep. (Ex. M) at 99-101. He also identified lumbar disease as a causing or contributing factor. *Id.* at 100, 94-95. As defendants demonstrated in their opening brief, Dr. McCamy could not articulate any scientific basis for his speculation that Baycol possibly was involved or was a contributing factor. *See* Defs' Opening Brief at 12-14. Thus, defendants demonstrated that Dr. McCamy's speculations should be excluded. Further, they showed that, even if

the testimony were admitted, it would be insufficient to create a triable issue of material fact. *Id.* at 15.

Plaintiff offers only three arguments in opposition. First, plaintiff argues that Dr. McCamy's PTO 114 report is sufficient to create a triable issue of fact. Pl. Opp. at 21-22. Plaintiff makes no mention of Dr. McCamy's testimony about that report. *Id.* But plaintiff cannot avoid summary judgment by citing an expert report but ignoring the expert's testimony. The unsworn report is not admissible evidence. *Engebretsen v. Fairchild Aircraft Corp.*, 21 F.3d 721, 728 (6th Cir. 1994); *Law v. NCAA*, 185 F.R.D. 324, 342 (D. Kan. 1999); *Ake v. General Motors Corp.*, 942 F. Supp. 869, 877-78 (W.D.N.Y. 1996). The expert's testimony is necessary for the Court to determine whether the opinion is grounded in good science and sufficiently reliable to be presented to a jury. *See Muldrow ex rel. Estate of Muldrow v. Re-Direct, Inc.*, 493 F.3d 160, 167 (D.C. Cir. 2007) (explaining that rule requiring disclosure of expert report contemplates that the expert will "supplement, elaborate upon, [and] explain" his report in his oral testimony) (internal quotations omitted); *U.S. v. W.R. Grace*, 504 F.3d 745, 765 (9th Cir. 2007) ("The trial judge is to assure the reliability of evidence by vetting under Rule 703 the bases underlying the expert's testimony and by examining under Rule 702 the expert's methodology"). Here, Dr. McCamy's testimony shows that the opinion expressed in his report is unreliable.

Second, contrary to plaintiff's claim, Pl. Opp. at 22, the report does not demonstrate that Dr. McCamy performed a proper differential diagnosis. Indeed, in the

section of the report listing the "grounds for my opinion," Dr. McCamy marked "yes" next to four grounds listed in the form report, but did ***not*** mark "yes" next to "[t]here is no other explanation for this injury apparent in the medical records I have reviewed." McCamy Rep. (Ex. F to Opening Brief) at 2. As he testified, there are other indeed other explanations for the Mr. Hartman's ailments, explanations that Dr. McCamy considers much more probable causes than Baycol. McCamy Dep. (Ex. M) at 98-101.

Third, plaintiff errs in arguing that an expert's inability to perform a proper differential diagnosis goes only to the weight and not the admissibility of the testimony. Pl. Opp. at 22. The cases cited by plaintiff actually hold that an expert need not rule out every other potential cause. But, if the expert cannot do so, in order for his opinion to be admissible, he must explain "why other conceivable causes are excludable." *Lauzon v. Senco Prods., Inc.*, 270 F.3d 681, 694 (8th Cir.); *see also See Kudabeck v. Kroger Co.*, 338 F.3d 856, 861-62 (8th Cir. 2003). Here, plaintiff's expert "ruled in" Baycol in the absence of any objective evidence that would suggest the presence of a Baycol-related injury and then failed to "rule out" the more probable causes of Mr. Hartman's muscle aches. This failure to conduct a proper differential diagnosis requires exclusion of Dr. McCamy's testimony as unreliable.

But even if the testimony were not excluded, defendants would be entitled to summary judgment because Dr. McCamy did not testify that Baycol was a substantial factor or the more likely cause of Mr. Hartman's ailments. At most, Dr. McCamy characterized Baycol as a potential contributing factor. McCamy Dep. (Ex. M) at 101-

03. That is insufficient to survive summary judgment under Minnesota law. *Thompson*, 456 F.3d at 812; *McDaniel*, 35 F. Supp. 2d at 738.

**II. PLAINTIFF HAS FAILED TO RAISE A GENUINE ISSUE OF MATERIAL FACT AS TO WHETHER DEFENDANTS PROPERLY WARNED HIS PRESCRIBING PHYSICIANS.**

Plaintiff argues that the learned intermediary doctrine does not bar his claims because "Dr. McCamy was not aware of the possibility of this type of muscle injury [myopathy]." Pl. Opp. at 24. Plaintiff does not cite and cannot cite evidence in support of this claim because the record shows that the doctors who prescribed Baycol, including Dr. McCamy, knew that Baycol – like other statins – could cause muscle pain. *See infra* at page 9. Similarly, plaintiff vaguely asserts that there was a "dearth of negative information concerning Baycol which was withheld from or misrepresented to prescribing physicians " and that "a variety of documents produced by the Defendants create a factual issue as to whether the Defendants adequately warned physicians about the negative effects of Baycol use." Pl. Opp. at 19. But once again, plaintiff does not cite a single piece of evidence to support these allegations, much less create a triable issue of material fact. Indeed, plaintiff's claim is at odds with the evidence.

The United States Food and Drug Administration regulated the marketing and sale of the prescription medication Baycol to ensure that it was "safe and effective." 21 U.S.C. § 393(b)(2)(B) (2007). The FDA regulated how and what the medical profession learned about Baycol through FDA-approved product labeling known as package inserts. 21 C.F.R. § 201.57(d)-(f). The FDA approved package inserts for Baycol that expressly warned physicians about possible adverse side effects, including

muscle effects. That approval pertained also to Bayer's specific warnings about muscle pain and weakness:

> **Rare cases of rhabdomyolysis with acute renal failure secondary to myoglobinuria have been reported with other HMG-CoA reductase inhibitors.** Myopathy, defined as muscle aching or muscle weakness, associated with increases in plasma creatine kinase (CK) values to greater than 10 times the upper limit of normal, was rare (<0.2%) in U.S. cerivastatin clinical trials. Myopathy should be considered in any patient with diffuse myalgias, muscle tenderness or weakness, and/or marked elevation of CK. Patients should be advised to report promptly unexplained muscle pain, tenderness, or weakness, particularly if accompanied by malaise or fever. BAYCOL™ (cerivastatin sodium tablets) therapy should be discontinued if markedly elevated CK levels occur or myopathy is diagnosed or suspected.

September 1997 package insert (Ex. G to Opening Brief) (under "WARNINGS, Skeletal Muscle") (emphasis in original); November 1998 package insert (Ex. N) (same). The labels also provided physicians with data regarding the incidence of various risks, such as the incidence of muscle aches, pains, and weakness, in clinical studies. *See id.* at Table 3. At the time they prescribed it for Mr. Hartman, plaintiff's physicians were well aware of the risks of muscle pain and weakness with Baycol as clearly set forth in the label.

Dr. Saccoman first prescribed Baycol for Mr. Hartmann on November 6, 1998. Saccoman Dep. (Ex. O) at 30-31. At that time, Dr. Saccoman was aware of the risk of muscle pain and weakness with Baycol, *id*. at 40-41, but prescribed it because it was necessary to get Mr. Hartman's cholesterol under control to reduce his risk of heart attack and stroke, especially in light of Mr. Hartman's diabetes. *Id.* at 32-34.

Dr. Neff refilled Mr. Hartman's Baycol prescriptions. Neff Dep. (Ex. L) at 41, 61. Before prescribing a drug, Dr. Neff familiarized herself with the drug by among other things reading about it in the Physician's Desk Reference, reviewing the package insert and consulting colleagues about their experience with the drug. *Id*. at 28-29. She did not consider Baycol's risk profile to be any different from that of several other statins she routinely prescribed, all of which had the risk of myopathy. *Id*. at 37-38.

Dr. McCamy testified that he would suspect he did not read the Baycol package insert in complete detail, McCamy Dep. (Ex. M) at 32, because he believed that Baycol would have the same side effects as the other statins, *id.* at 33, 39. He learned about the risks of statins in part by going to conferences where thought leaders discussed those risks as far back as the late 1980s or early 1990s, and was aware that myopathy was a risk of the statin class. *Id.* at 48-49. In fact, at the time he was treating Mr. Hartman, he was aware of the thought that Baycol my have greater risks associated with it because it was more potent than the other statins. *Id.* at 52-53.

Thus, contrary to plaintiff's completely unsupported assertion to the contrary, Bayer specifically warned about the risk of muscle pain and weakness – the injury alleged by plaintiff – long before Dr. Saccoman ever prescribed the drug to Mr. Hartman. Dr. Saccoman and Mr. Hartman's other physicians were aware of the risk of muscle pain and weakness at the time they initiated or renewed his Baycol prescription. Under these circumstances, the learned intermediary doctrine not only bars plaintiff's failure to warn claims, but bars plaintiff's other claims because defendants' warnings interrupted the chain of causation, thus preventing a finding that defendants caused

plaintiff's alleged injuries. *Ehlis v. Shire Richwood, Inc.*, 367 F.3d 1013, 1016 (8th Cir. 2004) (North Dakota law); *Catlett v. Wyeth, Inc.*, 379 F. Supp. 2d 1374, 1381 (M.D. Ga. 2004) (learned intermediary doctrine shields manufacturer from fraud, misrepresentation, failure to warn and breach of warranty claims); *Zanzuri v. G.D. Searle & Co.*, 748 F. Supp. 1511, 1515 (S.D. Fla. 1990) (learned intermediary doctrine shields manufacturer from tort liability).

## III. PLAINTIFF FAILED TO PRESENT ANY EVIDENCE IN SUPPORT OF HIS UNJUST ENRICHMENT CLAIM OR HIS FRAUD CLAIM

Just as he did with his failure to warn claim, plaintiff relies on vague unsupported assertions in arguing that his fraud and unjust enrichment claims should proceed to trial. But "[m]ere arguments or allegations are insufficient to defeat a properly supported motion for summary judgment; a 'nonmovant must present more than a scintilla of evidence and must advance specific facts to create a genuine issue of material fact for trial.'" *F.D.I.C.*, 106 F.3d at 263 (quoting *Rolscreen Co. v. Pella Prods. of St. Louis, Inc.*, 64 F.3d 1202, 1211 (8th Cir. 1995). Moreover, this Court is not required to "speculate on which portion of the record the nonmoving party relies, nor is it obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim." *White v. McDonnell Douglas Corp.*, 904 F.2d 456, 458 (8th Cir. 1990). But, that is precisely what plaintiff expects of the Court here.

With respect to his fraud claim, plaintiff merely states that:

> Mr. Hartman has presented sufficient evidence to establish a genuine issue of material fact with regard to his fraud claim . . . . Based upon the facts presented above, a genuine issue of material fact exists as to Mr. Hartman's fraud claim.

Pl. Opp. at 24-25. This is plaintiff's factual analysis. There is no attempt to specify, among other things, what false statements Bayer supposedly made or what evidence there is that Bayer knew that such statements were false.

With respect to the unjust enrichment claim, plaintiff acknowledges that he must present evidence of illegal or unconscionable conduct. *Schumacher v. Schumacher,* 627 N.W.2d 725, 729-730 (Minn. Ct. App. 2001). His factual and legal analysis of this point consists of:

> Mr. Hartman need only then assert that Baycol's [sic] retention of this benefit was wrongful. Such a determination has been sufficiently supported by the foregoing facts and analysis, and need not be repeated.

Pl. Opp. at 26. However, as demonstrated above, plaintiff has no evidentiary support for his claims. Accordingly, in light of plaintiff's failure to meet his burden to present evidence sufficient to raise a genuine issue of material fact, these claims must be dismissed as well.

## CONCLUSION

For the foregoing reasons, defendants Bayer Corporation and Bayer AG and SmithKlineBeecham Corporation d/b/a/ GlaxoSmithKline respectfully request that the Court dismiss this action with prejudice, and grant summary judgment in favor of the defendants and against Plaintiff John Hartman.

Dated: February 22, 2008

Respectfully submitted,

Philip S. Beck
Adam Hoeflich
BARTLIT BECK HERMAN PALENCHAR & SCOTT LLP
54 West Hubbard Street, Suite 300
Chicago, IL 60610
(312) 494-4400

/signature on file/
Susan A. Weber
James W. Mizgala
SIDLEY AUSTIN LLP
One South Dearborn Street
Chicago, IL 60603
(312) 853-7000

Paul J. Zidlicky
SIDLEY AUSTIN LLP
1501 K Street, N.W.
Washington, D.C. 20005
(202) 736-8000

Richard K. Dandrea
ECKERT SEAMENS CHERIN & MELLOTT LLC
USX Tower, 600 Grant St., 44th Floor
Pittsburgh, PA 15219
(412) 566-6000

Peter W. Sipkins (No. 101540).
Elizabeth S. Wright (No. 0184111)
DORSEY & WHITNEY LLP
50 South Sixth Street, Suite 1500
Minneapolis, MN 55402
(612) 340-2600

Douglas R. Marvin
WILLIAMS & CONNOLLY
725 Twelfth Street, N.W.
Washington, D.C. 20005
(202) 434-5000

*Counsel for Bayer Corporation and Bayer AG*

Scott A. Smith
Tracy J. Van Steenburgh
HALLELAND LEWIS NILAN SIPKINS & JOHNSON, P.A.
220 South Sixth Street, Suite 600
Minneapolis, Minnesota 55402-4501
(612) 338-1838

/signature on file/
Fred T. Magaziner
DECHERT LLP
Cira Centre
2929 Arch Street
Philadelphia, PA 19104
(215) 994-4000

*Counsel for SmithKline Beecham Corporation d/b/a GlaxoSmithKline*

CERTIFICATE OF SERVICE

I, David L. Barlett, certify that true and correct copies of the foregoing Defendants' Reply on Memorandum on Their Motion for Summary Judgment, Local Rule 7.1 certificate, and exhibits were electronically filed and served on February 22, 2008.

______________________________